

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   JAN 13 2006

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

### SUPERCEDING INDICTMENT FOR CONSPIRACY TO ILLEGALLY DISPENSE CONTROLLED SUBSTANCES, ILLEGAL DISPENSING OF CONTROLLED SUBSTANCES, MONEY LAUNDERING CONSPIRACY AND FOR ASSET FORFEITURE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. : 05-130 |
| v. | * | SECTION:    "L" (5) |
| | * | |

CHERLYN R. ARMSTRONG, a/k/a
    CHERLYN "COOKIE" ARMSTONG, a/k/a
    CHERLYN "COOKIE" ARMSTRONG-SCHERER, a/k/a
    CHERLYN "COOKIE" PREJEAN
SUZETTE CULLINS, M.D.
JOSEPH F. GUENTHER, M.D.
BETTY DE LOACH, M.D.
SCHERER PHYSICIANS WEIGHT LOSS CENTER, INC.
SCHERER'S MEDICAL CENTER, INC.
SCHERER'S SLIDELL MEDICAL CENTER, L.L.C.
SCHERER'S GRETNA MEDICAL CENTER, L.L.C.
MIA'S PHARMACY, L.L.C.
MIA'S PHARMACY SLIDELL, L.L.C.
BELLA MIA HOLDINGS, L.L.C.
C.C. ARMSTRONG CO., L.L.C.
THE BALLARD CO., L.L.C.

VIOLATION: 21 USC § 841(a)(1)
21 USC § 841 (b)(1)(D)
21 USC § 841 (b)(2)
21 USC § 846
21 USC § 853
18 USC § 1956 (h)
18 USC § 982
18 USC § 2

\*          \*          \*



___ Fee_____
___ Process_____
_X_ Dktd
___ CtRmDep
___ Doc. No.

The Grand Jury charges that:

## COUNT 1
Conspiracy to illegally dispense controlled substances

**A.    AT ALL MATERIAL TIMES HEREIN:**

The Clinics

1.    Beginning at a time unknown, but in or about  January 1998, and continuing until on or about April 11, 2005, **CHERLYN R. ARMSTRONG, a/k/a CHERLYN "COOKIE" ARMSTRONG, a/k/a CHERLYN "COOKIE" ARMSTRONG-SCHERER, a/k/a CHERLYN "COOKIE" PREJEAN** (hereafter **ARMSTRONG** ), a Registered Nurse, ("RN") licensed with the Louisiana State Board of Nursing, with individuals known and unknown to the grand jury, owned companies that operated weight loss clinics and pain management clinics in Slidell, Metairie, and at various times either in Harvey or Gretna, Louisiana.  The companies were  **SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.,  SCHERER'S MEDICAL CENTER, INC., SCHERER'S SLIDELL MEDICAL CENTER, L.L.C.** and **SCHERER'S GRETNA MEDICAL CENTER, L.L.C.** (hereafter collectively referred to as **THE CLINICS**).

2.    Between approximately January 1998, and approximately August 2000, **THE CLINICS** focused on the sale of controlled substance weight loss drugs.  In approximately August 2000, **ARMSTRONG** and others known and unknown to the Grand Jury, changed the focus of **THE CLINICS** from weight loss to the sale of controlled substance pain management drugs.  Between approximately January 1998 through approximately April 2005,

2

**ARMSTRONG** through **THE CLINICS** caused to be distributed, dispensed or sold Schedule III and IV controlled substances and other drugs purportedly for weight loss and pain management.

### The Pharmacies

3.     Beginning at a time unknown, but prior to on or about September 3, 2003, **ARMSTRONG** with others known and unknown to the grand jury began operation of **MIA'S PHARMACY, L.L.C. ("MIA'S")** in Metairie, LA.  Subsequently, **ARMSTRONG** and with others known and unknown to the grand jury opened **MIA'S PHARMACY SLIDELL, L.L.C. ("MIA'S SLIDELL")** located in Slidell, LA.  (Both pharmacies hereafter collectively referred to as **"THE PHARMACIES"**).  **THE PHARMACIES'** primary purpose was to fill the thousands of prescriptions for pain management drugs obtained by patients from **THE CLINICS.**

### The Doctors

4.     At various times, the defendants **SUZETTE CULLINS, M.D. ("CULLINS")**, **JOSEPH F. GUENTHER, M.D. ("GUENTHER")**, and **BETTY DE LOACH, M.D. ("DE LOACH"),** and others known and unknown to the Grand Jury, while working at **THE CLINICS** gave the public the perception of legitimacy to **THE CLINICS** as they signed thousands of dispensation orders and prescriptions for Schedule III and IV controlled substances and other drugs purportedly for weight loss and pain management.

### General Terms and Definitions:

5.     The Controlled Substances Act ("CSA") and the Code of Federal Regulations ("CFR") govern the manufacture, distribution, and dispensation of controlled substances in the United States. The Schedule III and IV controlled substances referenced above mean a drug or

other substance, as designated by Title 21 of the United States Code, Section 802(c)(6), and the CFR.

6.      A Schedule III drug, or other substance, has a low to moderate propensity for physical dependence, but a high potential for psychological dependence.

7.      A Schedule IV drug, or other substance, has potential for psychological dependence.

8.      Both Schedule III and IV drugs require written prescriptions. The prescriptions can only be written for a legitimate medical purpose in the usual course of a professional practice. If the prescription is issued beyond the bounds of medical practice or is not for a legitimate medical purpose in the usual course of a professional practice, the dispensing of the prescription violates the Controlled Substances Act.

9.      The term "dispense" means to deliver a controlled substance to an ultimate user by or pursuant to a lawful order of a practitioner, including a prescription written by a practitioner. A "practitioner" means a medical doctor, physician, or other individual licensed, registered or otherwise permitted by the United States or the jurisdiction in which she or he practices, to dispense a controlled substance in the course of professional practice.

10.      The Drug Enforcement Administration ("DEA") issues registration numbers to qualifying doctors, who become authorized to dispense Schedule II, III, IV, and V controlled substances.

11.      Doctors who transfer or sell controlled substances from a location are required to have a valid DEA registration number and state dispensing license for each location.

## Charged Controlled Substances and Other Drugs:

12.     Hydrocodone, the generic name for Lorcet, Lortab, and Vicodin, is a narcotic drug and Schedule III controlled substance which also contains Acetaminophen.  Dosage units are normally expressed in milligrams with the first number being Hydrocodone and the second number being Acetaminophen: i.e. a drug prescribed as Lorcet 5/500 contains 5 milligrams of Hydrocodone and 500 milligrams of Acetaminophen; a drug prescribed by its generic name as Hydrocone 10/650 contains 10 milligrams of Hydrocodone and 650 milligrams of Acetaminophen.

13.     Alprazolam, the generic name for Xanax, is a Benzodiazipine drug and Schedule IV controlled substance.

14.      Diazepam, the generic name for Valium, is a Benzodiazepine drug and Schedule IV controlled substance.

15.     Soma is a  noncontrolled substance whose active ingredient is Carisoprodol (its generic name) which metabolizes into Meprobamate, a Schedule IV anti-anxiety medication.

16.     Hydrocodone, Alprazolam and Carisoprodol are desirable for drug addicted people to obtain due to their physiological and physical qualities and heroin-like effects.  The street terminology for the combination of these three drugs is known as the "holy trinity." These drugs are commonly sold illicitly by drug traffickers and dealers to addicts for an amount greater than what is usually paid to the pharmacy and to the doctor for the prescription.

17.     Didrex is a stimulant drug and Schedule III controlled substance whose active ingredient is benzphetamine (its generic name) frequently used in weight loss.

18.     Bontril is a stimulant drug and Schedule III controlled substance whose active ingredient is phendimetrazine (its generic name) frequently used in weight loss.

**B.     NATURE AND PURPOSE OF CONSPIRACY:**

19.     It was the purpose of the conspiracy that the defendants, **ARMSTRONG, THE CLINICS, THE PHARMACIES, CULLINS, GUENTHER,** and **DELOACH,** with others known and unknown to the grand jury, derive currency and other property by illegally dispensing and selling controlled substances to individuals for little or no medical reason. The defendants routinely violated the medical standards defining proper treatments for weight loss and pain management. To cloak the operation with minimal appearances of legitimacy, patients only had to provide some form of identification and paperwork claiming they received some injury in order to receive controlled substances for pain management. In sum, controlled, addictive drugs were obtained by individuals for no legitimate medical purpose and not in the usual course of a professional practice under the guise of weight loss and pain management, all in order to enrich the defendants.

**C.     MANNER AND MEANS OF THE CONSPIRACY:**

20.     During the course and in the furtherance of the conspiracy, in addition to other acts, the defendants **ARMSTRONG, THE CLINICS, THE PHARMACIES, CULLINS, GUENTHER** and **DELOACH,** with others known and unknown to the Grand Jury:

6

a.     created and managed weight loss and pain management clinics that allowed patients in exchange for cash prepayments to purchase and receive controlled substances from physicians without valid DEA or State issued dispensing licenses;

b.     ordered, received, and transported controlled substances by the fraudulent use and misuse of DEA physicians' registration numbers;

c.     failed to conduct proper audits for controlled substances sold by **SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER, INC.**

d.     hired physicians in training, including residents and interns without valid DEA registrations to write dispensing orders and prescriptions;

e.     stocked for sale the most widely abused drugs which drug abusers wanted; the type of drugs and dosage strengths of medications drug abusers wanted were pre-printed on the prescription pad physicians used to prescribe and dispense;

f.     sold controlled substances without a dispensing order or prescription by a physician;

g.     allowed patients to alter their medical files to disguise the frequency of their clinic visits and the previous receipt of controlled substance prescriptions and dispensation orders;

h.     allowed patients to attend each clinic and receive overlapping dispensing orders and prescriptions for the same medical condition from physicians;

7

i.      allowed physicians with knowledge of patients receiving overlapping dispensing

orders and prescriptions for the same medical condition to continue prescribing

controlled substances to such patients;

j.      advised patients in advance if certain physicians would not write dispensing

orders or prescriptions the patient desired;

k.      allowed patients to select physicians they wished to see and routed patients to

physicians who were unfamiliar with a patient's past receipt of dispensing orders

and prescriptions in order for that patient to receive overlapping prescriptions for

the same drugs issued for the same treatment periods by other clinic physicians;

l.      continued the dispensation and prescription of controlled substances despite

knowing of false or fraudulent medical reports and tests, or inaccurate medical

reports, upon which the dispensing orders and prescriptions were based;

m.      failed to act on information of addiction, drug abuse, drug selling, drug overdose

or other medical emergency conditions for patients seen at **THE CLINICS** when

such information was provided to them;

n.      failed to investigate and report any patient violations of the controlled substances

law discovered by them;

o.      scheduled and saw hundreds of patients daily knowing that the number of

prescriptions and dispensing orders for those patients exceeded the number of

prescriptions and dispensing orders that could be issued by individual

practitioners acting in the course of their usual professional practice and for a legitimate medical purpose;

p.      failed to conduct standardized testing to determine if patients were taking the controlled substances as prescribed;

q.      failed to conduct pill counts or provide psychological testing for patients; and

r.      failed to require adherence of weight loss and chronic pain management rules and regulations.

s.      used preprinted patient evaluation sheets which inaccurately informed physicians and staff of patient information gathered.

t.      used non-professional staff trained to follow procedures to facilitate abusers and others to receive pain management and weight loss controlled substance drugs from any physician attempting to issue prescriptions and dispensing orders in the course of their usual professional practice.

**D.**      **OVERT ACTS:**

21.      From on or about September 1, 1998, through on or about September 8, 2000, the defendants, **ARMSTRONG, SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER, INC.,** using Dr. Z's DEA registration number, ordered, transported and held for dispensation by sale 267,698 Schedule III and 30,480 Schedule IV controlled substance pills knowing that Dr. Z did not have proper licenses for the clinics to sell controlled substances;

9

22.      In approximately February 1998, **ARMSTRONG, SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER, INC.,** hired Dr. B and Armstrong instructed Dr. B, who was a resident at Charity Hospital in New Orleans, LA, to use Charity Hospital's DEA # assigned to her as a resident to write prescriptions for **SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER, INC.,** patients knowing that Dr. B did not have a valid DEA registration to write dispensing orders and prescriptions;

23.      From on or about August 26, 2000, Dr. L applied for dispensing licenses for **SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER, INC.,** which were issued on or about September 27, 2000.  On November 1, 2000 Dr. L advised the licensing board and asked for the licenses' cancellation because he no longer planed on working at the clinics;

24.      From on or about an unknown date, through September 9, 2000, **SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER, INC.,** possessed prescriptions and dispensing orders allegedly signed by Dr. H., Dr. C., Dr. Z, Dr. W and Dr. M with missing or incomplete patient names, addresses or dates;

25.      From on or about an unknown date, but beginning not later than September 2000, **ARMSTRONG** kept a survey of the number of patients denied prescription orders by physicians working at **THE CLINICS**.  **ARMSTRONG** advised Dr. M, and others known and unknown to the Grand Jury, that for any refusal to write prescriptions, the firm would lose money and business. Defendant **ARMSTRONG** caused the working hours of physicians to be cut for those

10

physicians who failed to always dispense or prescribe controlled substances the patients wanted.

26.  **ARMSTRONG, THE CLINICS, THE PHARMACIES, CULLINS,**

**GUENTHER,** and **DELOACH** failed to follow the medical and other standards governing the

treatment of patients for weight loss or pain management, including among others, the Rules of

the Louisiana State Board of Medical Examiners concerning Noncancer-related Chronic or

Intractable Pain despite having knowledge of the existence of said standards.  Specifically, on or

about September 29, 2000 Dr.W informed defendants **ARMSTRONG, SCHERER'S**

**PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER,**

**INC.,** of the Rule of the Louisiana State Board of Medical Examiners concerning Noncancer-

related Chronic or Intractable Pain.

27.  On or about the following dates, defendants **ARMSTRONG, SCHERER'S**

**PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER,**

**INC.,** aided and abetted by others known and unknown to the Grand Jury in the Eastern District

of Louisiana, did knowingly and intentionally sell the below listed controlled substances, without

a physician's authorization:

| DATE | INDIVIDUALS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|------|-------------|--------------------------------|----------|
| 08/21/00 | **ARMSTRONG** | Hydrocodone 10/650 90 tablets . | III |
| 08/30/00 | T.J. L.A. | Hydrocodone 10/650 60 tablets. | III |
| 08/30/00 | T.J. L.A. | Didrex 50 mg. 90 tablets | III |

| DATE | INDIVIDUALS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|------|-------------|--------------------------------|----------|
| 09/06/00 | **ARMSTRONG** | Xanax 1 mg. 30 tablets | IV |

28.    From on or about an unknown date, but before and through September 8, 2000

defendant **ARMSTRONG** transported Schedule III and IV controlled substances between her

house and the three clinic locations operated by **SCHERER'S PHYSICIAN'S WEIGHT**

**LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER, INC.,** in violation of DEA

regulations. On September 8, 2000 **ARMSTRONG** was found to be in possession of 1,639

dosage units of Schedule III and Schedule IV controlled substances while traveling in her

personal vehicle from her residence and **ARMSTRONG, SCHERER'S PHYSICIAN'S**

**WEIGHT LOSS CENTER, INC.,** and **SCHERER'S MEDICAL CENTER, INC.,** was found

to be in possession of 14,879 dosage units of Schedule III and Schedule IV controlled substances

at the clinic, all in violation of DEA regulations.

29.    From on or about the below listed dates, the defendants **ARMSTRONG,**

**SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.,** and **SCHERER'S**

**MEDICAL CENTER, INC.,** aided and abetted by the below listed defendant medical

practitioners, along with others known and unknown to the Grand Jury, in the Eastern District of

Louisiana, did knowingly and intentionally dispense the below listed controlled substances,

outside the scope of professional practice and not for a legitimate medical purpose:

| DATE | PHYSICIAN | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|------|-----------|--------------------------------|----------|
| 08/16/00 | Dr. Z. | Didrex 50 mg 90 tablets | IV |
| 08/17/00 | Dr. Z. | Didrex 50 mg 90 tablets | IV |
| 08/17/00 | Dr. Z. | Didrex 50 mg 90 tablets | IV |
| 08/21/00 | Dr. M. | Bontril 105 mg 30 tablets | IV |
| 08/30/00 | Dr. Z. | Didrex 50 mg 90 tablets | IV |
| 08/30/00 | Dr. Z. | Hydrocodone 10/650 60 tablets | III |
| 09/06/00 | Dr. Z. | Didrex 50 mg 90 tablets | IV |
| 09/06/00 | Dr. Z. | Hydrocodone 10/650 60 tablets | III |

30.     From on or about November 30, 2004, through April 11, 2005, **THE CLINICS,** defendant **ARMSTRONG** and others known and unknown to the Grand Jury, failed to follow the terms of a consent agreement entered into with the Louisiana Nursing Board to prevent patients from going to more than one of **THE CLINICS** in the same week and failed to allow adequate time for physicians to determine patient problems and provide proper counseling.

31.     From on or about the below listed dates, the defendants **ARMSTRONG, THE CLINICS** and **THE PHARMACIES** aided and abetted by the below listed defendant medical practitioners, along with others known and unknown to the Grand Jury, in the Eastern District of

13

Louisiana, did knowingly and intentionally dispense the below listed controlled substances,

outside the scope of professional practice and not for a legitimate medical purpose:

| DATE | DEFENDANT PHYSICIANS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|------|----------------------|----------------------------------|----------|
| 12/15/04 | CULLINS | Hydrocodone 10/650-86 tablets. | III |
| 12/15/04 | CULLINS | Alprazolam 2 mg-26 tablets | IV |
| 12/17/04 | CULLINS | Hydrocodone 10/650-90 tablets. | III |
| 12/17/04 | CULLINS | Diazepam 10 mg-30 tablets | IV |
| 12/21/04 | DELOACH | Hydrocodone 10/650-90 tablets. | III |
| 12/21/04 | DELOACH | Diazepam 10 mg-30 tablets | IV |
| 12/27/04 | CULLINS | Hydrocodone 10/650-90 tablets. | III |
| 12/27/04 | CULLINS | Alprazolam 2 mg-30 tablets | IV |
| 01/04/05 | DELOACH | Hydrocodone 10/650-90 tablets. | III |
| 01/04/05 | DELOACH | Alproazolam 2 mg-30 tablets. | III |
| 01/07/05 | CULLINS | Hydrocodone 10/650-90 tablets. | III |
| 01/07/05 | CULLINS | Diazepam 10 mg-30 tablets | IV |
| 01/10/05 | CULLINS | Hydrocodone 10/650-90 tablets. | III |

14

| DATE | DEFENDANT PHYSICIANS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|---|---|---|---|
| 01/10/05 | CULLINS | Alprazolam 2mg- 30 tablets | IV |
| 01/18/05 | DELOACH | Hydrocodone 10/650- 90 tablets | III |
| 01/18/05 | DELOACH | Alprazolam 2 mg- 30 tablets | IV |
| 01/21/05 | DELOACH | Hydrocodone 10/650- 90 tablets | III |
| 01/21/05 | DELOACH | Diazepam 10 mg- 30 tablets | IV |
| 01/24/05 | CULLINS | Hydrocodone 10/650- 90 tablets | III |
| 01/24/05 | CULLINS | Alprazolam 2 mg- 30 tablets | III |
| 02/01/05 | DELOACH | Hydrocodone 10/650- 90 tablets. | III |
| 02/04/05 | GUENTHER | Hydrocodone 10/650- 90 tablets | III |
| 02/04/05 | GUENTHER | Diazepam 10 mg- 30 tablets | III |
| 02/07/05 | CULLINS | Hydrocodone 10/650- 90 tablets | III |
| 02/07/05 | CULLINS | Alprazolam 2 mg- 31 tablets | IV |
| 02/15/05 | DELOACH | Hydrocodone 10/650- 90 tablets. | III |
| 02/15/05 | DELOACH | Alprazolam 2 mg- 30 tablets | IV |

| DATE | DEFENDANT PHYSICIANS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|------|----------------------|--------------------------------|----------|
| 02/18/05 | GUENTHER | Hydrocodone 10/650- 90 tablets | III |
| 02/18/05 | GUENTHER | Diazepam 10 mg- 30 tablets | III |
| 02/23/05 | CULLINS | Hydrocodone 10/650- 82 tablets | III |
| 02/23/05 | CULLINS | Alprazolam 2 mg- 27 tablets | IV |
| 03/07/05 | CULLINS | Hydrocodone 10/650- 90 tablets | III |
| 03/07/05 | CULLINS | Alprazolam 2 mg- 30 tablets | III |
| 03/17/05 | W.R | Hydrocodone 10/650- 82 tablets | III |
| 03/17/05 | W.R | Alprazolam 2 mg- 26 tablets | IV |
| 03/21/05 | CULLINS | Hydrocodone 10/650- 90 tablets | III |
| 03/21/05 | CULLINS | Alprazolam 2 mg- 30 tablets | IV |
| 03/25/05 | GUENTHER | Hydrocodone 10/650- 90 tablets | III |
| 03/25/05 | GUENTHER | Diazepam 10 mg- 20 tablets | IV |
|  |  |  |  |
| 01/27/05 | DELOACH | Hydrocodone 10/650- 90 tablets. | III |

| DATE | DEFENDANT PHYSICIANS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|---|---|---|---|
| 01/27/05 | DELOACH | Alprozolam 1 mg-30 tablets | IV |
| 02/10/05 | CULLINS | Hydrocodone 10/650-90 tablets. | III |
| 02/10/05 | CULLINS | Alprazolam 1 mg-30 tablets | IV |
| 03/04/05 | CULLINS | Hydrocodone 10/650-90 tablets. | III |
| 03/22/05 | GUENTHER | Hydrocodone 10/650-75 tablets | III |
| 03/24/05 | W.R. | Hydrocodone 10/650-90 tablets | III |
| 03/24/05 | W.R. | Alprazolam 2 mg-30 tablets | IV |
| 03/25/05 | CULLINS | Hydrocodone 10/650-62 tablets. | III |

32.     From in or about January 1998, the exact date being unknown to the Grand Jury, and continuing to on or about April 11, 2005, and at varying times therein, in the Eastern District of Louisiana and elsewhere, the defendants,  **ARMSTRONG, THE CLINICS, THE PHARMACIES, CULLINS, GUENTHER,** and **DELOACH,** did knowingly and intentionally combine, conspire, confederate and agree together and with each other, and with other persons known and unknown to the Grand Jury, to dispense a mixture and substance containing a detectable amount of Hydrocodone, a Schedule III controlled substance, Alprazolam, a Schedule IV controlled substance, Benzphetamine, a Schedule III controlled substance and

17

Phendimetrazine, a Schedule III controlled substance outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(b)(1)(D) and 841(b)(2); all in violation of Title 21, United States Code, Section 846.

## COUNTS 2-27
### Illegal dispensing of controlled substances

33.    The allegations and paragraphs contained in Count 1 sections A through C are incorporated as though fully set forth herein.

34.    On or about the below listed dates, the defendants **ARMSTRONG, THE CLINICS** and **THE PHARMACIES** aided and abetted by the below listed defendant medical practitioners, and others known and unknown to the Grand Jury, in the Eastern District of Louisiana, did knowingly and intentionally dispense the below listed controlled substances, outside the scope of professional practice and not for a legitimate medical purpose:

| COUNT | DATE | DEFENDANT PHYSICIANS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|---|---|---|---|---|
| 2 | 12/15/04 | **CULLINS** | Hydrocodone 10/650- 86 tablets. Alprazolam 2 mg- 26 tablets. | III<br><br>IV |
| 3 | 12/17/04 | **CULLINS** | Hydrocodone 10/650- 90 tablets. Diazepam 10 mg- 30 tablets. | III<br><br>IV |
| 4 | 12/21/04 | **DELOACH** | Hydrocodone 10/650- 90 tablets. Diazepam 10 mg- 30 tablets. | III<br><br>IV |

| COUNT | DATE | DEFENDANT PHYSICIANS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|---|---|---|---|---|
| 5 | 12/27/04 | CULLINS | Hydrocodone 10/650-90 tablets.<br>Alprazolam 2 mg-30 tablets. | III<br>IV |
| 6 | 01/04/05 | DELOACH | Hydrocodone 10/650-90 tablets<br>Alprazolam 2 mg-30 tablets. | III<br>IV |
| 7 | 01/07/05 | CULLINS | Hydrocodone 10/650-90 tablets.<br>Diazepam 10 mg-30 tablets. | III<br>IV |
| 8 | 01/10/05 | CULLINS | Hydrocodone 10/650-90 tablets.<br>Alprazolam 2 mg-30 tablets. | III<br>IV |
| 9 | 01/18/05 | DELOACH | Hydrocodone 10/650-90 tablets<br>Alprazolam 2 mg-30 tablets. | III<br>IV |
| 10 | 01/21/05 | DELOACH | Hydrocodone 10/650-90 tablets<br>Diazepam 10 mg-30 tablets. | III<br>IV |
| 11 | 01/24/05 | CULLINS | Hydrocodone 10/650-90 tablets.<br>Alprazolam 2 mg-30 tablets. | III<br>IV |
| 12 | 02/01/05 | DELOACH | Hydrocodone 10/650-90 tablets. | III |

| COUNT | DATE | DEFENDANT PHYSICIANS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|---|---|---|---|---|
| 13 | 02/04/05 | GUENTHER | Hydrocodone 10/650-90 tablets. Diazepam 10 mg-30 tablets. | III IV |
| 14 | 02/07/05 | CULLINS | Hydrocodone 10/650-90 tablets. Alprazolam 2 mg-30 tablets. | III IV |
| 15 | 02/15/05 | DELOACH | Hydrocodone 10/650-90 tablets. Alprazolam 2 mg-30 tablets. | III IV |
| 16 | 02/18/05 | GUENTHER | Hydrocodone 10/650-90 tablets. Diazepam 10 mg-30 tablets | III IV |
| 17 | 02/23/05 | CULLINS | Hydrocodone 10/650-82 tablets. Alprazolam 2 mg-26 tablets. | III IV |
| 18 | 03/07/05 | CULLINS | Hydrocodone 10/650-90 tablets. Diazepam 10 mg-30 tablets. | III IV |
| 19 | 03/17/05 | W.R | Hydrocodone 10/650-82 tablets. Alprazolam 2 mg-26 tablets. | III IV |
| 20 | 03/21/05 | CULLINS | Hydrocodone 10/650-90 tablets. Alprazolam 2 mg-30 tablets. | III IV |

| COUNT | DATE | DEFENDANT PHYSICIANS | CONTROLLED SUBSTANCE and AMOUNT | SCHEDULE |
|-------|------|----------------------|--------------------------------|----------|
| 21 | 03/25/05 | GUENTHER | Hydrocodone 10/650-75 tablets. Diazepam 10 mg- 20 tablets. | III IV |
| | | | | |
| 22 | 01/27/05 | DELOACH | Hydrocodone 10/650-90 tablets. Alprazolam 1 mg- 30 tablets. | III IV |
| 23 | 02/10/05 | CULLINS | Hydrocodone 10/650-90 tablets. Alprazolam 1 mg- 30 tablets. | III IV |
| 24 | 03/04/05 | CULLINS | Hydrocodone 10/650-90 tablets. | III |
| 25 | 03/22/05 | GUENTHER | Hydrocodone 10/650-75 tablets | III |
| 26 | 03/24/05 | W.R. | Hydrocodone 10/650-90 tablets. Alprazolam 2mg- 30 tablets. | III IV |
| 27 | 03/25/05 | CULLINS | Hydrocodone 10/650-62 tablets. | III |

all in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States

Code, Section 2.

## COUNT 28
Money laundering conspiracy

**A.    AT ALL TIMES MATERIAL HEREIN:**

35.    The allegations and paragraphs contained in Counts 1 through 27 are incorporated as though fully set forth herein.

36.    **BELLA MIA HOLDINGS, L.L.C.,** owned by defendant **ARMSTRONG,** SLP and L.A., purchased on March 6, 2003, property located at 2622-32 Metairie Lawn Drive, Metairie, Louisiana, for $910,00.00.   **BELLA MIA HOLDINGS, L.L.C.** had no independent source of income. The $910,000.00 was proceeds which **BELLA MIA HOLDINGS, L.L.C.** obtained from the operation of **THE CLINICS. SCHERER'S MEDICAL CENTER, INC.,** and **MIA'S PHARMACY, L.L.C.** operated from this property.

37.    **C.C. ARMSTRONG, L.L.C.** owned by defendant **ARMSTRONG** and SLP, purchased property located at 560 Oak Harbor Boulevard, Slidell, Louisiana for $900,000 on October 8, 2003.   **C.C. ARMSTRONG, L.L.C.,** paid an additional $395,000.00 for improvements to 560 Oak Harbor Boulevard, Slidell, Louisiana.   **C.C. ARMSTRONG, L.L.C.,** purchased Lot 18 located adjacent to 560 Oak Harbor Boulevard for $151,900.00 on April 16, 2004. **C.C. ARMSTRONG, L.L.C.** had no independent source of income. The total $1,446,900.00 was proceeds from the operation of **THE CLINICS. SCHERER'S MEDICAL CENTER, INC., SCHERER'S SLIDELL MEDICAL CENTER, L.L.C.,** and  **MIA'S PHARMACY SLIDELL, L.L.C.,** operated from this property.

22

38.     **THE BALLARD COMPANY, L.L.C.**, owned by defendant **ARMSTRONG** and SLP, purchased property located at 72 Westbank Expressway, Gretna, Louisiana, on August 14, 2003, for $775,000.00.  **THE BALLARD COMPANY, L.L.C.** had no independent source of income.  The total amount of $775,000.00 was proceeds from the operation of **THE CLINICS.  SCHERER'S MEDICAL CENTER, INC.,** and **SCHERER'S GRETNA MEDICAL CENTER, INC.,** operated out of this location.

39.     **C.C. ARMSTRONG, L.L.C.** purchased property located at 1631 Esplanade Avenue, New Orleans, Louisiana, for $890,000 on March 15, 2004, by deed of trust signed by defendant **CHERLYN R. ARMSTRONG** and SLP.  The $890,000 was proceeds from the operation of **THE CLINICS**.

40.     **ARMSTRONG** and SLP purchased 5440 Eastover Drive, New Orleans, Louisiana, on October 22, 2004 for $150,000.00, and 5460 Eastover Drive on January 29, 2003, for $150,000.00, both purchases were made with money from the operation of **THE CLINICS.**

**B.     CONSPIRACY:**

41.     Beginning at a time unknown, but in or about  January 1998, and continuing until to on or about approximately April 11, 2005, **ARMSTRONG, BELLA MIA HOLDINGS, L.L.C. , C.C. ARMSTRONG, L.L.C. ,THE BALLARD COMPANY, L.L.C. , THE CLINICS** and **THE PHARMACIES,** in the Eastern District of Louisiana and elsewhere, did knowingly and intentionally combine, conspire, confederate and agree together and with each other, and with other persons known and unknown to the Grand Jury, to conduct financial transactions affecting interstate commerce in violation of Title 18, United States Code, Section

23

1956(a)(1)(A)(I) and (a)(1)(B)(I), which transactions involved the proceeds of specified unlawful activities, namely,

that is conspiracy to illegally dispense controlled substances (21 U.S.C. 846) as set forth in Count 1 and the illegal dispensation of controlled substances (21 U.S.C. 841(a)(1) as set forth in Counts 2 through 27 of this indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature and source of the proceeds of said specified unlawful activity, and with the intent to promote the carrying on of the said specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, the defendants knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

## C.   MANNER AND MEANS OF THE CONSPIRACY:

42.   During the course and in furtherance of the conspiracy, in addition to other acts, the defendants **BELLA MIA HOLDINGS, L.L.C.** , **C.C. ARMSTRONG, L.L.C.** ,**THE BALLARD COMPANY, L.L.C.** , and **ARMSTRONG** , with others known and unknown to the Grand Jury, for the purpose to conceal and disguise the nature and source of the proceeds of said specified unlawful activity, and with the intent to promote the carrying on of the said specified unlawful activity :

a.   established multiple financial accounts in their names and in the name of a family member of defendant **ARMSTRONG's**; and

b.   transferred illegal proceeds from financial accounts in the name of **THE CLINICS** and **THE PHARMACIES** to accounts in the name of **BELLA MIA**

24

HOLDINGS, L.L.C. , C.C. ARMSTRONG, L.L.C. , THE BALLARD

COMPANY, L.L.C. , and ARMSTRONG.

43.    It was further the part of the conspiracy that the defendants **BELLA MIA**

**HOLDINGS, L.L.C. , C.C. ARMSTRONG, L.L.C. , THE BALLARD COMPANY, L.L.C. ,**

and **ARMSTRONG**, and others known to the Grand Jury, on the dates set forth below purchased

real property described below with proceeds obtained from the specified unlawful activities in

Counts 1 through 27:

| DATE | FINANCIAL TRANSACTION Purchase of Property | ENTITY | AMOUNT OF FUNDS |
|------|---------------------------------------------|--------|------------------|
| 03/06/03 | 2622-32 Metairie Lawn Drive Metairie, LA | **BELLA MIA HOLDINGS, L.L.C.** | $910,000.00 |
| 10/08/03 | 560 Oak Harbor Blvd., Slidell, LA | **C.C. ARMSTRONG, L.L.C.** | $900,000.00 |
| 04/16/04 | Lot 18, Oak Harbor Commercial, Phase II, St. Tammany Parish, LA | **C.C. ARMSTRONG, L.L.C.** | $151,900.00 |
| 03/15/04 | 1631 Esplanade Avenue, New Orleans, Louisiana, | **C.C. ARMSTRONG, L.L.C.** | $890,000 |
| 08/14/03 | 72 Westbank Expressway, Gretna, LA | **THE BALLARD COMPANY, L.L.C,** | $775,000.00 |
| 10/22/04 | 5440 Eastover Drive, New Orleans, LA | **ARMSTRONG** | $150,000.00 |
| 01/29/03 | 5460 Eastover Drive, New Orleans, LA | **ARMSTRONG** | $150,000.00 |

44.    It was further the part of the conspiracy that the defendants **BELLA MIA**

**HOLDINGS, L.L.C. , C.C. ARMSTRONG, L.L.C. , THE BALLARD COMPANY, L.L.C. ,**

and **ARMSTRONG**, and others known to the Grand Jury, on the dates set forth below conducted

the below listed financial transactions in and affecting interstate commerce with proceeds

obtained from the specified unlawful activities in Counts 1 through 27:

a. From December 6, 2004 through January 4, 2005, withdrew from **SCHERER'S**

**MEDICAL CENTER, INC.**, Regions Bank Account Number█████7562, approximately

$1,223,792.16.

b. From September 20, 2004 through February 3, 2005, withdrew from **SCHERER'S**

**GRETNA MEDICAL CENTER L.L.C.**, Bank One Account Number ████3117,

approximately $750, 020.02.

c. From September 20, 2004 through February 3, 2005, withdrew from **SCHERER'S**

**SLIDELL MEDICAL CENTER, L.L.C.**, Bank One Account Number ████3257,

approximately $2,096,380.00.

d. From December 6, 2004 through January 31, 2005, withdrew from **MIA'S**

**PHARMACY, L.L.C.**, Regions Bank Account Numbers ████8556 and ████4843,

approximately $124,961.43.

e. From July 14, 2004 through February 3, 2005, withdrew from **MIA'S PHARMACY**

**SLIDELL, L.L.C.**, Bank One Business Account Number ████3265, approximately

$701,036.83.

f. On July 9, 2004, withdrew from **SCHERER'S PHYSICIAN WEIGHT LOSS, INC.**,

Bank One Account Number ████9961, approximately $260,720.33.

g. On January 5, 2005, withdrew from **C.C. ARMSTRONG CO., L.L.C.,** Bank One Account Number ████9217, approximately $150,000.00.

All in violation of Title 18, United States Code, 1956(h).

### NOTICE OF DRUG FORFEITURE

1.      The allegations of Counts 1 through 27 of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 21, United States Code, Section 853.

2.      As a result of the offenses alleged in Counts 1 through 27, defendants, **CHERLYN R. ARMSTRONG, a/k/a CHERLYN "COOKIE" ARMSTRONG, a/k/a CHERLYN "COOKIE" ARMSTRONG-SCHERER, a/k/a CHERLYN "COOKIE" PREJEAN** (hereafter **ARMSTRONG**); **SUZETTE CULLINS, M.D.; BETTY DE LOACH, M.D.; JOSEPH F. GUENTHER, M.D.; SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.; SCHERER'S MEDICAL CENTER, INC.; SCHERER'S SLIDELL MEDICAL CENTER, L.L.C.; SCHERER'S GRETNA MEDICAL CENTER, L.L.C.; MIA'S PHARMACY, L.L.C.;  MIA'S PHARMACY SLIDELL, L.L.C.; BELLA MIA HOLDINGS, L.L.C.; C.C. ARMSTRONG CO., L.L.C.; J. BALLARD HALL, L.L.C.; L. AMEDEE ON ESPLANADE, L.L.C.; and THE BALLARD CO., L.L.C.,** shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the said violations and any and all property used or intended to be used in any manner or

27

part to commit and to facilitate the commission of the violations alleged in Counts 1 through 27

of this Superseding Indictment, including, but not limited to, the following:

     a.     $1,355,049.99 U.S. Currency;

     b.     Regions Bank Account Number     7562 in the name
             of Scherer's Medical Center, Inc., in the amount of
             $197,444.31;

     c.     Regions Bank Account Number     8556 in the name
             of Mia's Pharmacy, in the amount of $69,389.01;

     d.     Regions Bank Account Number     4488 in the name of
             Bella Mia Holding, L.L.C., in the amount of $2,860.83;

     e.     JPMorgan Chase Bank formerly Bank One Account
             Number     3117 in the name of Scherer's Gretna
             Medical Center, L.L.C., in the amount of $198,959.81;

     f.     JPMorgan Chase Bank formerly Bank One Account
             Number     3257 in the name of Scherer's Slidell
             Medical Center, L.L.C., in the amount of $701.09;

     g.     JPMorgan Chase Bank formerly Bank One Account
             Number     3265 in the name of Mia's Pharmacy
             Slidell, L.L.C., in the amount of $590.23;

     h.     JPMorgan Chase Bank formerly Bank One Account
             Number     3026 in the name of Bella Mia Holdings,
             L.L.C., in the amount of $ 53,881.96;

     i.     JPMorgan Chase Bank formerly Bank One Account
             Number     7904 in the name of Bella Mia Holdings,
             L.L.C., in the amount of $25,649.27;

     j.     JPMorgan Chase Bank formerly Bank One Account
             Number     9217 in the name of C.C. Armstrong Co.,
             L.L.C., in the amount of $288,271.75;

k.     JPMorgan Chase Bank formerly Bank One Account
       Number ▆▆3125 in the name of C.C. Armstrong Co.,
       L.L.C., in the amount of $46,233.49;

l.     JPMorgan Chase Bank formerly Bank One Account
       Number ▆▆3042 in the name of L Amedee On
       Esplanade, L.L.C.., in the amount of $ 25,669.75;

m.     JPMorgan Chase Bank formerly Bank One Account
       Number ▆▆3133 in the name of  Ballard Co., L.L.C.., in
       the amount of $35,727.75;

n.     JPMorgan Chase Bank formerly Bank One Account Number
       ▆▆9282 in the name of  Ballard Co., L.L.C.., in the amount of
       $19,935.03;

o.     JPMorgan Chase Bank formerly Bank One Account
       Number ▆▆3273 in the name of J Ballard Hall, L.L.C..,
       in the amount of $24,340.36;

p.     JPMorgan Chase Bank formerly Bank One Account
       Number ▆▆7305 in the names of Steven L. Prejean or
       Cherlyn Cookie Armstrong, in the amount of $11,454.39;

q.     JPMorgan Chase Bank formerly Bank One Account
       Number ▆▆3305 in the name of Cherlyn Cookie
       Armstrong Scherer, in the amount of $1,140,188.77;

r.     JPMorgan Chase Bank formerly Bank One Account
       Number ▆▆0258 in the name of Cherlyn Cookie
       Armstrong Scherer, in the amount of $1,883,665.92;

s.     JPMorgan Chase Bank formerly Bank One Account Number
       ▆▆6023 in the name of Scherer's Medical Center, Inc., in
       the amount of $121,438.04;

t.     JPMorgan Chase Bank formerly Bank One Account
       Number ▆▆1436 in the name of Cherlyn Cookie
       Armstrong, in the amount of $140,127.99;

u.     Property currently recorded in the name of C.C. Armstrong
       Co., L.L.C., and described as follows: Those certain pieces

or portions of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the State of Louisiana, Parish of St. Tammany, in a portion of Sections 27 and 34, Township 9 South, Range 14 East, designated as Oak Harbor Commercial, Phase II, all as per plan of W/E Professional Surveys, certified correct by Hugh McCurdy, III, R.P.L.S., dated June 11, 1998 and filed of record in the Office of the Clerk of Court for St. Tammany Parish, State of Louisiana, as Map File No. 1678 on October 23, 1998, and more fully described as follows, to wit: being **Lots 16 and 17 of Oak Harbor Commercial, Phase II, St. Tammany Parish, Louisiana; AND**

v.     Property currently recorded in the name of C.C. Armstrong Co., L.L.C., and described as follows: That certain piece or portion of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the State of Louisiana, Parish of St. Tammany, in a portion of Sections 27 and 34, Township 9 South, Range 14 East, designated as Oak Harbor Commercial, Phase II, all as per plan of W/E Professional Surveys, certified correct by Hugh McCurdy, III, R.P.L.S., dated June 11, 1998 and filed of record in the Office of the Clerk of Court for St. Tammany Parish, State of Louisiana, as Map File No. 1678 on October 23, 1998, and more fully described as follows, to wit: being **Lot 18 of Oak Harbor Commercial, Phase II, St. Tammany Parish, Louisiana;**

w.     Property currently recorded in the name of C.C. Armstrong, Co., L.L.C. and described as follows: One certain lot of ground, together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in Square 760, bounded by Esplanade Avenue, North Derbigny Street, Kerlerec Street and North Claiborne Avenue, designated as Lot D on a plan of survey made by J.J. Krebs & Sons, Inc.,

Civil Engineers and Surveyors, dated January 20, 1957,
resurveyed and certified correct on January 3, 1966, a copy
of which is annexed to act passed before Jerome Meunier,
Notary Public, dated January 26, 1966, and according to
which said Lot D forms the corner of Esplanade Avenue
and North Derbigny Street, and measures thence 64 feet
front on Esplanade Avenue, a depth and front on North
Derbigny Street of 158 feet, 11 inches and 3 lines, thence
on a line parallel to Esplanade Avenue running towards
North Claiborne Avenue, 100 feet, thence on a line parallel
to North Derbigny Street and running towards Esplanade
Avenue of 28 feet 11 inches and 3 lines, thence on a line
parallel to Esplanade Avenue and running towards North
Derbigny Street 36 feet, thence on a line parallel to North
Derbigny Street running to Esplanade Avenue of 130 feet.
All in accordance with a survey made by Gilbert, Kelly &
Couturie, Inc., Surveying and Engineering, dated March 18,
1983, said property bears the same measurements,
designation and location as above set forth. The
improvements thereon bear the Municipal Number: **1631
Esplanade Avenue, New Orleans, Louisiana;**

x.     Property currently recorded in the name of Bella Mia
Holdings, L.L.C., and described as follows: Two certain
lots of ground, together with all the buildings and
improvements thereon, and all the rights, ways, privileges,
servitudes and appurtenances thereunto belonging or in any
wise appertaining, situated in the Parish of Jefferson, State
of Louisiana, in that part thereof known as Metairie Lawn
Subdivision, in Plot 9, bounded by Metairie Lawn Drive,
Interstate Highway 10 (side), Kenner-New Orleans,
Ridgelake Drive (side), and 26th Street, designated as Lots
"A" and "B" on a survey made by Dading, Marques &
Associates, Inc., dated March 26, 1996, a copy of which is
annexed to another act passed before me, Notary, this date,
and according thereto, said Lot "A" adjoins Lot "B" and
measures 75 feet front on Metairie Lawn Drive, same width
in the rear, by a depth of 151 feet 6 inches 0 lines, actual
(150 feet, title) between equal and parallel lines. Lot "B"
adjoins Lot "A" and lies nearer to and commences 288.13
feet from the corner of Metairie Lawn Drive and 26th Street,
and measures thence 75 feet front on Metairie Lawn Drive,

31

same width in the rear, by a depth of 151 feet 6 inches 0 lines, actual (150 feet, title) between equal and parallel lines. Lots "A" and "B" of Plot 9 are a resubidivion of Lots 281, 282, 283, 284, 285 and 286, as per Ordinance No. 5487, registered on May 10, 1962, registered in COB 552, Folio 328, record of Jefferson Parish. Improvements thereon bear the Municipal Numbers: **2622-32 Metairie Lawn Drive, Metairie, Louisiana**;

y.    Property currently recorded in the names of Cherlyn Armstrong wife of/and Steven L. Prejean and described as follows: One certain lot of ground, together with all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Eastover Subdivision Phase III-a, being a portion of the LaKratt Tract (formerly New Orleans Lakeshore Land Co. Tract), Third Municipal District of the City of New Orleans, Orleans Parish, Louisiana and designated, in accordance with a plan of resubdivision of Wink, Incorporated, dated 9/6/02, last revised on 2/6/03 and approved by the City Planning Commission on 2/27/03, Subdivision Docket No. 86/96 and registered under Declaration of Title Change by Subdivision, in Notarial Archives No. 2003-12186, in the Conveyance Office as Instrument #254209, said lot or parcel of ground is designated as: Lot 19 of said subdivision, according to the aforesaid plan of subdivision, said Lot 19 measures 185.00 feet front on Eastover Drive South, a width in the rear of 144.42 feet, with a depth on the Lake Forest Boulevard sideline of 205.10 feet and a depth on the opposite sideline of 201.29 feet, except, however, that all of the right, title and interest, including, without limitation, all of the ownership interest, in, to, of and under the said Eastover Drive South, as said Eastover Drive South is shown and described on the said plan of Eastover Subdivision Phase IIIa which is registered in Orleans Parish, Louisiana, as Instrument #254209 is hereby expressly and particularly excluded and excepted from this sale and from the parcel of ground herein conveyed, and no portion of said Eastover Drive South is herein or hereby conveyed and except, however that all of the right, title and interest, including, without limitation, all of the ownership interest in, to, of

32

and under Parcel 3-LA or LAKE, as said Parcel 3-LA and LAKE are shown and described on the said plan of Eastover Subdivision, Phase IIIa, is hereby expressly and particularly excluded and excepted from this sale and from the parcel of ground herein conveyed, and no portion of said Parcel 3-LA or LAKE is herein or hereby conveyed. However, any and all servitude benefits that have been established in favor of or for the benefit of the lot herein conveyed are also herein and hereby conveyed. Improvements thereon bear the Municipal No. **5440 South Eastover Drive, New Orleans, Louisiana**;

z.   Property currently recorded in the name of Cherlyn Armstrong and described as follows: One Certain Lot of ground, together with all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Eastover Subdivision Phase III-a, being a portion of the LaKratt Tract (former New Orleans Lakeshore Land Co. Tract), Third Municipal District of the City of New Orleans, Orleans Parish, Louisiana and designated, in accordance with a plan of resubdivision of Wink, Incorporated, dated 9/6/02, last revised on 2/6/03 and approved by the City Planning Commission on 2/27/03, Subdivision Docket No. 86/96 and registered under Declaration of Title Change by Subdivision, in Notarial Archives No. 2003-12186, in the Conveyance Office as Instrument #254209, said lot or parcel of ground is designated as: Lot 20 of said subdivision; according to the aforesaid plan of subdivision, said Lot 20 measures 154.61 feet front on Eastover Drive South, a width in the rear of 148.73 feet, with a depth on the Lake Forest Boulevard sideline of 175.00 feet and a depth on the opposite sideline of 205.10 feet, except, however, that all of the right, title and interest, including, without limitation, all of the ownership interest, in, to, of and under the said Eastover Drive South, as said Eastover Drive South is shown and described on the said plan of Eastover Subdivision Phase IIIa which is registered in Orleans Parish, Louisiana, as Instrument #254209 is hereby expressly and particularly excluded and excepted from this sale and from the parcel of ground herein conveyed, and no portion of said Eastover Drive South is herein or hereby

33

conveyed and except, however that all of the right, title and interest, including, without limitation, all of the ownership interest in, to, of and under Parcel 3-LA or LAKE, as said Parcel 3-LA and LAKE are shown and described on the said plan of Eastover Subdivision, Phase IIIa, is hereby expressly and particularly excluded and excepted from this sale and from the parcel of ground herein conveyed, and no portion of said Parcel 3-LA or LAKE is herein or hereby conveyed. However, any and all servitude benefits that have been established in favor of or for the benefit of the lot herein and hereby conveyed. Improvements thereon bear Municipal No. **5460 South Eastover Drive, New Orleans, Louisiana**;

aa.     Property currently recorded in the name of Cherlyn Armstrong and described as follows: One certain lot of ground, together with all the buildings and improvements thereon and all the rights, ways, means, privileges, servitudes, prescriptions, appurtenances and advantages thereunto belonging or in anywise appertaining thereto, situated in Eastover Subdivision Phase 1 being a portion of the LaKratt Tract (former New Orleans Lakeshore Land Co. Tract), Third Municipal District of the City of New Orleans, Orleans Parish, Louisiana and designated, in accordance with a plan of resubdivision by J.J. Krebs & Sons, Inc., last revised on April 20, 1987, and approved by the City Planning Commission on April 21, 1987, Subdivision Docket No. 126/86 and registered under Declaration of Title Change by Subdivision, in Notarial Archives No. 702305, in COB 809, folio 547, said lot or parcel of ground is designated as: Lot 15, Square "N". According to the aforesaid plan of subdivision, said square is bounded by Eastover Drive, Parcel 1Z (side), Parcel 1-M, Jahncke Road or Canal, and Greenbrier Drive, and said lot commences at a distance of 237.53 feet from the corner of Eastover Drive and Greenbrier Drive, measures 80.59 feet front on Eastover Drive, a width in the rear of 155.85 feet and a depth on the side nearest to Greenbrier Drive of 260.53 feet, and a depth on the opposite side of 227.08 feet. According to survey by Dading, Marques & Associates, Inc., dated October 7, 1987, redated 2/15/88 and 8/22/92, said square is bounded by Eastover Drive, Greenbrier

34

Drive, the northern boundary of the subdivision (side), Jahncke Road or Canal, Parcel 1-M and Parcel 1-Z (side) and Lot 15 has the same dimensions as hereinabove set forth; except, however, that all of Vendor's right, title and interest, including, without limitation, all of the right, title and interest, and including, without limitation, all of the ownership interest, in, to, of and under the said Eastover Drive, as said Eastover Drive is shown and described on the said plan of Eastover Subdivision Phase 1, which is registered in COB 809, folio 547, Orleans Parish, Louisiana, is hereby expressly and particularly excluded and excepted from this sale and from the parcel of ground herein conveyed, and no portion of said Eastover Drive is herein or hereby conveyed. However, any and all servitude benefits that have been established in favor of or for the benefit of the lot herein conveyed are also herein and hereby conveyed. Improvements thereon bear Municipal No. **6250 Eastover Drive, New Orleans, Louisiana;**

bb.  Property currently recorded in the name of The Ballard Co. L.L.C., and described as follows: That certain piece or portion of ground, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of Jefferson, State of Louisiana, in that part thereof known as Brooklyn Pastures, in the City of Gretna, within the area bounded by Westside Expressway, Stumpf Boulevard, Gretna Boulevard, Smithway, Linda Court, S. Randall Court, N. Randall Court, and Willow Drive, which portion of ground is designated as Lot Q-2B on a plat of survey and resubdivision of Lot Q-2 made by Dufrene Surveying & Engineering, Inc. dated June 3, 1994, approved by the Mayor and Board of Aldermen of the City of Gretna on July 11, 1994, Ordinance No. 3022, registered in COB 2898, folio 337, Instrument No. 94-39720, Jefferson Parish, Louisiana, and according to which, said Lot Q-2B commences at a distance of 350 feet (in a northeasterly direction along the southerly right of way line of the Westside Expressway) from the intersection of the easterly line of Willow Drive with the southerly line of the Westside Expressway, and measures thence 150 feet front

on Westside Expressway, same width in the rear, by a depth along its northeasterly sideline nearer to Stumpf Boulevard, a distance of 355.90 feet, and a depth along its opposite sideline nearer to Willow Drive, a distance of 354.66 feet. Said property bears Municipal Number: **72 Westbank Expressway, Gretna, Louisiana**;

cc.     Property currently recorded in the name of Katrice Angel Goins Haisley, and described as follows:  A Certain lot of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in Square A, Harrington Park East (Lake Forest Sub. No. 10), bounded by Briarheath and Stratmore Drive, Morrison and Bullard Roads and Harrington Drive East, designated as Lot 15-A on the survey made by Gilbert, Kelly & Couturie, Inc., Surveying and Engineering, dated November 30, 1976, and according to said survey, said Lot 15-A commences at a distance of 327.06 feet on a curved line from the corner of Stratmore and Briarheath Drives, and  measures thence 61 feet front on Briarheath Drive, a width in the rear of 61.07 feet, by a depth on the sideline nearer to Morrison Road of 107.43 feet, and a depth on the opposite sideline of 110.27 feet, Lot 15-A is composed of portions of original Lot Nos. 15 and 16.  The improvements thereon bear the Municipal Number: **7340 Briarheath Drive, New Orleans, Louisiana;**

dd.     Property currently recorded in the name of Louise Jackson Amedee, and described as follows: One Certain lot of ground, situated in the Third District of New Orleans, Square D of Lake Forest Subdivision, No. 10 (Barrington Park East), bounded by Briarheath Drive, Stratmore Drive, Morrison Road, Jahncke Canal and Sewerage and Water Board Servitude, designated as Lot No. 22, on a survey made by Universal Land Surveyors, Inc., dated March 26, 1981, revised May 15, 1981, revised August 20, 1981.  Said Lot commences at a distance of 542.98 feet from the intersection of Briarheath Drive and Stratmore Drive, measures 45.09 feet front on  Briarheath Drive, a width in the rear of 92.69 feet, by a depth on the sideline nearer to

Morrison Road of 123.44 feet and a depth on the opposite sideline of 108.13 feet.  Said Lot No. 22 of Square D is a portion of former Groves 3 and 5 of Section 26 of the New Orleans Lakeshore Land Company Subdivision, subject to restrictions, servitudes, and outstanding mineral rights of record affecting the property.  Improvements bear the Municipal Number: **7506 Briarheath Drive, New Orleans, Louisiana;**

ee.  Rossi Revolver, Serial Number: W086636, with five rounds;

ff.  2002 Toyota Sienna, bearing Vehicle Identification Number: 4T3ZF19C62U458813;

gg.  2004 Mercury Grand Marquis, bearing Vehicle Identification Number: 2MEFM75W64X615212;

3.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) to

seek forfeiture of any other property of said defendants up to the value of the above forfeitable

property, that is $13,930,805.00.

All in violation of Title 18, United States Code, Section 982.

37

## NOTICE OF MONEY LAUNDERING FORFEITURE

1.      The allegations of Count 28 of this Superseding Indictment are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

2.      As a result of the offenses, alleged in Count 28, defendants, **CHERLYN R. ARMSTRONG, a/k/a CHERLYN "COOKIE" ARMSTRONG, a/k/a CHERLYN "COOKIE" ARMSTRONG-SCHERER, a/k/a CHERLYN "COOKIE" PREJEAN** (hereafter **ARMSTRONG**); **SUZETTE CULLINS, M.D.; BETTY DE LOACH, M.D.; JOSEPH F. GUENTHER, M.D.; SCHERER'S PHYSICIAN'S WEIGHT LOSS CENTER, INC.; SCHERER'S MEDICAL CENTER, INC.; SCHERER'S SLIDELL MEDICAL CENTER, L.L.C.; SCHERER'S GRETNA MEDICAL CENTER, L.L.C.; MIA'S PHARMACY, L.L.C.;  MIA'S PHARMACY SLIDELL, L.L.C.; BELLA MIA HOLDINGS, L.L.C.; C.C. ARMSTRONG CO., L.L.C.; J. BALLARD HALL, L.L.C.; L. AMEDEE ON ESPLANADE, L.L.C.; and THE BALLARD CO., L.L.C.,** shall forfeit to the United States all property real or personal, involved in the aforesaid offenses and all property traceable to such property, including but not limited to the following property, which was involved in the said violations of Title 18, United States Code, Sections 1956(h) and 982, or is traceable to such property:

a.      $1,355,049.99 U.S. Currency;

b.  Regions Bank Account Number ████7562 in the name
    of Scherer's Medical Center, Inc., in the amount of
    $197,444.31;

c.  Regions Bank Account Number ████8556 in the name
    of Mia's Pharmacy, in the amount of $69,389.01;

d.  Regions Bank Account Number ████4488 in the name of
    Bella Mia Holding, L.L.C., in the amount of $2,860.83;

e.  JPMorgan Chase Bank formerly Bank One Account
    Number ████3117 in the name of Scherer's Gretna
    Medical Center, L.L.C.., in the amount of $198,959.81;

f.  JPMorgan Chase Bank formerly Bank One Account
    Number ████3257 in the name of Scherer's Slidell
    Medical Center, L.L.C.., in the amount of $701.09;

g.  JPMorgan Chase Bank formerly Bank One Account
    Number ████3265 in the name of Mia's Pharmacy
    Slidell, L.L.C.., in the amount of $590.23;

h.  JPMorgan Chase Bank formerly Bank One Account
    Number ████3026 in the name of Bella Mia Holdings,
    L.L.C.., in the amount of $ 53,881.96;

i.  JPMorgan Chase Bank formerly Bank One Account
    Number ████7904 in the name of Bella Mia Holdings,
    L.L.C.., in the amount of $25,649.27;

j.  JPMorgan Chase Bank formerly Bank One Account
    Number ████9217 in the name of C.C. Armstrong Co.,
    L.L.C.., in the amount of $288,271.75;

k.  JPMorgan Chase Bank formerly Bank One Account
    Number ████3125 in the name of C.C. Armstrong Co.,
    L.L.C.., in the amount of $46,233.49;

l.  JPMorgan Chase Bank formerly Bank One Account
    Number ████3042 in the name of L Amedee On
    Esplanade, L.L.C.., in the amount of $ 25,669.75;

m.   JPMorgan Chase Bank formerly Bank One Account
     Number ▮▮▮▮3133 in the name of Ballard Co., L.L.C.., in
     the amount of $35,727.75;

n.   JPMorgan Chase Bank formerly Bank One Account Number
     ▮▮▮▮9282 in the name of Ballard Co., L.L.C.., in the amount of
     $19,935.03;

o.   JPMorgan Chase Bank formerly Bank One Account
     Number ▮▮▮▮3273 in the name of J Ballard Hall, L.L.C..,
     in the amount of $24,340.36;

p.   JPMorgan Chase Bank formerly Bank One Account
     Number ▮▮▮▮7305 in the names of Steven L. Prejean or
     Cherlyn Cookie Armstrong, in the amount of $11,454.39;

q.   JPMorgan Chase Bank formerly Bank One Account
     Number ▮▮▮▮3305 in the name of Cherlyn Cookie
     Armstrong Scherer, in the amount of $1,140,188.77;

r.   JPMorgan Chase Bank formerly Bank One Account
     Number ▮▮▮▮0258 in the name of Cherlyn Cookie
     Armstrong Scherer, in the amount of $1,883,665.92;

s.   JPMorgan Chase Bank formerly Bank One Account Number
     ▮▮▮▮6023 in the name of Scherer's Medical Center, Inc., in
     the amount of $121,438.04;

t.   JPMorgan Chase Bank formerly Bank One Account
     Number ▮▮▮▮1436 in the name of Cherlyn Cookie
     Armstrong, in the amount of $140,127.99;

u.   Property currently recorded in the name of C.C. Armstrong
     Co., L.L.C., and described as follows: Those certain pieces
     or portions of ground, together with all the buildings and
     improvements thereon, and all the rights, ways, privileges,
     servitudes, appurtenances and advantages thereunto
     belonging or in anywise appertaining, situated in the State
     of Louisiana, Parish of St. Tammany, in a portion of
     Sections 27 and 34, Township 9 South, Range 14 East,
     designated as Oak Harbor Commercial, Phase II, all as per
     plan of W/E Professional Surveys, certified correct by

Hugh McCurdy, III, R.P.L.S., dated June 11, 1998 and filed of record in the Office of the Clerk of Court for St. Tammany Parish, State of Louisiana, as Map File No. 1678 on October 23, 1998, and more fully described as follows, to wit: being **Lots 16 and 17 of Oak Harbor Commercial, Phase II, St. Tammany Parish, Louisiana; AND**

v.  Property currently recorded in the name of C.C. Armstrong Co., L.L.C., and described as follows: That certain piece or portion of ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the State of Louisiana, Parish of St. Tammany, in a portion of Sections 27 and 34, Township 9 South, Range 14 East, designated as Oak Harbor Commercial, Phase II, all as per plan of W/E Professional Surveys, certified correct by Hugh McCurdy, III, R.P.L.S., dated June 11, 1998 and filed of record in the Office of the Clerk of Court for St. Tammany Parish, State of Louisiana, as Map File No. 1678 on October 23, 1998, and more fully described as follows, to wit: being **Lot 18 of Oak Harbor Commercial, Phase II, St. Tammany Parish, Louisiana;**

w.  Property currently recorded in the name of C.C. Armstrong, Co., L.L.C. and described as follows: One certain lot of ground, together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in Square 760, bounded by Esplanade Avenue, North Derbigny Street, Kerlerec Street and North Claiborne Avenue, designated as Lot D on a plan of survey made by J.J. Krebs & Sons, Inc., Civil Engineers and Surveyors, dated January 20, 1957, resurveyed and certified correct on January 3, 1966, a copy of which is annexed to act passed before Jerome Meunier, Notary Public, dated January 26, 1966, and according to which said Lot D forms the corner of Esplanade Avenue and North Derbigny Street, and measures thence 64 feet front on Esplanade Avenue, a depth and front on North Derbigny Street of 158 feet, 11 inches and 3 lines, thence

41

on a line parallel to Esplanade Avenue running towards
North Claiborne Avenue, 100 feet, thence on a line parallel
to North Derbigny Street and running towards Esplanade
Avenue of 28 feet 11 inches and 3 lines, thence on a line
parallel to Esplanade Avenue and running towards North
Derbigny Street 36 feet, thence on a line parallel to North
Derbigny Street running to Esplanade Avenue of 130 feet.
All in accordance with a survey made by Gilbert, Kelly &
Couturie, Inc., Surveying and Engineering, dated March 18,
1983, said property bears the same measurements,
designation and location as above set forth.  The
improvements thereon bear the Municipal Number: **1631
Esplanade Avenue, New Orleans, Louisiana;**

x.     Property currently recorded in the name of Bella Mia
Holdings, L.L.C., and described as follows:  Two certain
lots of ground, together with all the buildings and
improvements thereon, and all the rights, ways, privileges,
servitudes and appurtenances thereunto belonging or in any
wise appertaining, situated in the Parish of Jefferson, State
of Louisiana, in that part thereof known as Metairie Lawn
Subdivision, in Plot 9, bounded by Metairie Lawn Drive,
Interstate Highway 10 (side), Kenner-New Orleans,
Ridgelake Drive (side), and 26th Street, designated as Lots
"A" and "B" on a survey made by Dading, Marques &
Associates, Inc., dated March 26, 1996, a copy of which is
annexed to another act passed before me, Notary, this date,
and according thereto, said Lot "A" adjoins Lot "B" and
measures 75 feet front on Metairie Lawn Drive, same width
in the rear, by a depth of 151 feet 6 inches 0 lines, actual
(150 feet, title) between equal and parallel lines.  Lot "B"
adjoins Lot "A" and lies nearer to and commences 288.13
feet from the corner of Metairie Lawn Drive and 26th Street,
and measures thence 75 feet front on Metairie Lawn Drive,
same width in the rear, by a depth of 151 feet 6 inches 0
lines, actual (150 feet, title) between equal and parallel
lines.  Lots "A" and "B" of Plot 9 are a resubidivion of Lots
281, 282, 283, 284, 285 and 286, as per Ordinance No.
5487, registered on May 10, 1962, registered in COB 552,
Folio 328, record of Jefferson Parish.  Improvements
thereon bear the Municipal Numbers: **2622-32 Metairie
Lawn Drive, Metairie, Louisiana;**

42

y.      Property currently recorded in the names of Cherlyn
Armstrong wife of/and Steven L. Prejean and described as
follows: One certain lot of ground, together with all of the
rights, ways, privileges, servitudes, appurtenances and
advantages thereunto belonging or in anywise appertaining,
situated in Eastover Subdivision Phase III-a, being a portion
of the LaKratt Tract (formerly New Orleans Lakeshore
Land Co. Tract), Third Municipal District of the City of
New Orleans, Orleans Parish, Louisiana and designated, in
accordance with a plan of resubdivision of Wink,
Incorporated, dated 9/6/02, last revised on 2/6/03 and
approved by the City Planning Commission on 2/27/03,
Subdivision Docket No. 86/96 and registered under
Declaration of Title Change by Subdivision, in Notarial
Archives No. 2003-12186, in the Conveyance Office as
Instrument #254209, said lot or parcel of ground is
designated as: Lot 19 of said subdivision, according to the
aforesaid plan of subdivision, said Lot 19 measures 185.00
feet front on Eastover Drive South, a width in the rear of
144.42 feet, with a depth on the Lake Forest Boulevard
sideline of 205.10 feet and a depth on the opposite sideline
of 201.29 feet, except, however, that all of the right, title
and interest, including, without limitation, all of the
ownership interest, in, to, of and under the said Eastover
Drive South, as said Eastover Drive South is shown and
described on the said  plan of Eastover Subdivision Phase
IIIa which is registered in Orleans Parish, Louisiana, as
Instrument #254209 is hereby expressly and particularly
excluded and excepted from this sale and from the parcel of
ground herein conveyed, and no portion of said Eastover
Drive South is herein or hereby conveyed and except,
however that all of the right, title and interest, including,
without limitation, all of the ownership interest in, to, of
and under Parcel 3-LA or LAKE, as said Parcel 3-LA and
LAKE are shown and described on the said plan of
Eastover Subdivision, Phase IIIa, is hereby expressly and
particularly excluded and excepted from this sale and from
the parcel of ground herein conveyed, and no portion of
said Parcel 3-LA or LAKE is herein or hereby conveyed.
However, any and all servitude benefits that have been
established in favor of or for the benefit of the lot herein
conveyed are also herein and hereby conveyed.

Improvements thereon bear the Municipal No. **5440 South Eastover Drive, New Orleans, Louisiana**;

z.   Property currently recorded in the name of Cherlyn Armstrong and described as follows: One Certain Lot of ground, together with all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Eastover Subdivision Phase III-a, being a portion of the LaKratt Tract (former New Orleans Lakeshore Land Co. Tract), Third Municipal District of the City of New Orleans, Orleans Parish, Louisiana and designated, in accordance with a plan of resubdivision of Wink, Incorporated, dated 9/6/02, last revised on 2/6/03 and approved by the City Planning Commission on 2/27/03, Subdivision Docket No. 86/96 and registered under Declaration of Title Change by Subdivision, in Notarial Archives No. 2003-12186, in the Conveyance Office as Instrument #254209, said lot or parcel of ground is designated as: Lot 20 of said subdivision; according to the aforesaid plan of subdivision, said Lot 20 measures 154.61 feet front on Eastover Drive South, a width in the rear of 148.73 feet, with a depth on the Lake Forest Boulevard sideline of 175.00 feet and a depth on the opposite sideline of 205.10 feet, except, however, that all of the right, title and interest, including, without limitation, all of the ownership interest, in, to, of and under the said Eastover Drive South, as said Eastover Drive South is shown and described on the said plan of Eastover Subdivision Phase IIIa which is registered in Orleans Parish, Louisiana, as Instrument #254209 is hereby expressly and particularly excluded and excepted from this sale and from the parcel of ground herein conveyed, and no portion of said Eastover Drive South is herein or hereby conveyed and except, however that all of the right, title and interest, including, without limitation, all of the ownership interest in, to, of and under Parcel 3-LA or LAKE, as said Parcel 3-LA and LAKE are shown and described on the said plan of Eastover Subdivision, Phase IIIa, is hereby expressly and particularly excluded and excepted from this sale and from the parcel of ground herein conveyed, and no portion of said Parcel 3-LA or LAKE is herein or hereby conveyed. However, any and all servitude benefits that have

44

been established in favor of or for the benefit of the lot herein and hereby conveyed. Improvements thereon bear Municipal No. **5460 South Eastover Drive, New Orleans, Louisiana;**

aa.    Property currently recorded in the name of Cherlyn Armstrong and described as follows: One certain lot of ground, together with all the buildings and improvements thereon and all the rights, ways, means, privileges, servitudes, prescriptions, appurtenances and advantages thereunto belonging or in anywise appertaining thereto, situated in Eastover Subdivision Phase 1 being a portion of the LaKratt Tract (former New Orleans Lakeshore Land Co. Tract), Third Municipal District of the City of New Orleans, Orleans Parish, Louisiana and designated, in accordance with a plan of resubdivision by J.J. Krebs & Sons, Inc., last revised on April 20, 1987, and approved by the City Planning Commission on April 21, 1987, Subdivision Docket No. 126/86 and registered under Declaration of Title Change by Subdivision, in Notarial Archives No. 702305, in COB 809, folio 547, said lot or parcel of ground is designated as: Lot 15, Square "N". According to the aforesaid plan of subdivision, said square is bounded by Eastover Drive, Parcel 1Z (side), Parcel 1-M, Jahncke Road or Canal, and Greenbrier Drive, and said lot commences at a distance of 237.53 feet from the corner of Eastover Drive and Greenbrier Drive, measures 80.59 feet front on Eastover Drive, a width in the rear of 155.85 feet and a depth on the side nearest to Greenbrier Drive of 260.53 feet, and a depth on the opposite side of 227.08 feet. According to survey by Dading, Marques & Associates, Inc., dated October 7, 1987, redated 2/15/88 and 8/22/92, said square is bounded by Eastover Drive, Greenbrier Drive, the northern boundary of the subdivision (side), Jahncke Road or Canal, Parcel 1-M and Parcel 1-Z (side) and Lot 15 has the same dimensions as hereinabove set forth; except, however, that all of Vendor's right, title and interest, including, without limitation, all of the right, title and interest, and including, without limitation, all of the ownership interest, in, to, of and under the said Eastover Drive, as said Eastover Drive is shown and described on the said plan of Eastover Subdivision Phase 1, which is

registered in COB 809, folio 547, Orleans Parish,
Louisiana, is hereby expressly and particularly excluded
and excepted from this sale and from the parcel of ground
herein conveyed, and no portion of said Eastover Drive is
herein or hereby conveyed. However, any and all servitude
benefits that have been established in favor of or for the
benefit of the lot herein conveyed are also herein and
hereby conveyed. Improvements thereon bear Municipal
No. **6250 Eastover Drive, New Orleans, Louisiana;**

bb.    Property currently recorded in the name of The Ballard Co.
L.L.C., and described as follows: That certain piece or
portion of ground, together with all the buildings and
improvements thereon, and all of the rights, ways,
privileges, servitudes, appurtenances and advantages
thereunto belonging or in anywise appertaining, situated in
the Parish of Jefferson, State of Louisiana, in that part
thereof known as Brooklyn Pastures, in the City of Gretna,
within the area bounded by Westside Expressway, Stumpf
Boulevard, Gretna Boulevard, Smithway, Linda Court, S.
Randall Court, N. Randall Court, and Willow Drive, which
portion of ground is designated as Lot Q-2B on a plat of
survey and resubdivision of Lot Q-2 made by Dufrene
Surveying & Engineering, Inc. dated June 3, 1994,
approved by the Mayor and Board of Aldermen of the City
of Gretna on July 11, 1994, Ordinance No. 3022, registered
in COB 2898, folio 337, Instrument No. 94-39720,
Jefferson Parish, Louisiana, and according to which, said
Lot Q-2B commences at a distance of 350 feet (in a
northeasterly direction along the southerly right of way line
of the Westside Expressway) from the intersection of the
easterly line of Willow Drive with the southerly line of the
Westside Expressway, and measures thence 150 feet front
on Westside Expressway, same width in the rear, by a depth
along its northeasterly sideline nearer to Stumpf Boulevard,
a distance of 355.90 feet, and a depth along its opposite
sideline nearer to Willow Drive, a distance of 354.66 feet.
Said property bears Municipal Number: **72 Westbank
Expressway, Gretna, Louisiana;**

cc.    Property currently recorded in the name of Katrice Angel
Goins Haisley, and described as follows:  A Certain lot of

ground, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in Square A, Harrington Park East (Lake Forest Sub. No. 10), bounded by Briarheath and Stratmore Drive, Morrison and Bullard Roads and Harrington Drive East, designated as Lot 15-A on the survey made by Gilbert, Kelly & Couturie, Inc., Surveying and Engineering, dated November 30, 1976, and according to said survey, said Lot 15-A commences at a distance of 327.06 feet on a curved line from the corner of Stratmore and Briarheath Drives, and measures thence 61 feet front on Briarheath Drive, a width in the rear of 61.07 feet, by a depth on the sideline nearer to Morrison Road of 107.43 feet, and a depth on the opposite sideline of 110.27 feet, Lot 15-A is composed of portions of original Lot Nos. 15 and 16. The improvements thereon bear the Municipal Number: **7340 Briarheath Drive, New Orleans, Louisiana;**

dd.     Property currently recorded in the name of Louise Jackson Amedee, and described as follows: One Certain lot of ground, situated in the Third District of New Orleans, Square D of Lake Forest Subdivision, No. 10 (Barrington Park East), bounded by Briarheath Drive, Stratmore Drive, Morrison Road, Jahncke Canal and Sewerage and Water Board Servitude, designated as Lot No. 22, on a survey made by Universal Land Surveyors, Inc., dated March 26, 1981, revised May 15, 1981, revised August 20, 1981. Said Lot commences at a distance of 542.98 feet from the intersection of Briarheath Drive and Stratmore Drive, measures 45.09 feet front on Briarheath Drive, a width in the rear of 92.69 feet, by a depth on the sideline nearer to Morrison Road of 123.44 feet and a depth on the opposite sideline of 108.13 feet. Said Lot No. 22 of Square D is a portion of former Groves 3 and 5 of Section 26 of the New Orleans Lakeshore Land Company Subdivision, subject to restrictions, servitudes, and outstanding mineral rights of record affecting the property. Improvements bear the Municipal Number: **7506 Briarheath Drive, New Orleans, Louisiana;**

47

ee.   $13,930,805.00 in United States Currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property which was involved in the aforesaid offenses or is traceable to such property.

3.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1) to

seek forfeiture of any other property of said defendants up to the value of the above forfeitable

property, that is $13,930,805.00.

All in violation of Title 18, United States Code, Section 982.

A TRUE BILL:

_____
F O R E P E R S O N

_____
JIM LETTEN
UNITED STATES ATTORNEY
Louisiana Bar Roll No. 8517

_____
JAN MASELLI MANN
First Assistant United States Attorney
Chief, Criminal Division
Louisiana Bar Roll No. 9020

_____
TONY GORDON SANDERS
Assistant United States Attorney
Louisiana Bar Roll No. 11705

New Orleans, Louisiana
January 13, 2005